**Arvinger v Cobble Hill Health Ctr., Inc.**

2025 NY Slip Op 32047(U)

June 9, 2025

Supreme Court, Kings County

Docket Number: Index No. 509056/2015

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 9th day of June 2025.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
BETTY J. ARVINGER, as Administrator of the Estate of
CHARLIE ARVINGER a/k/a CHARLIE MAE ARVINGER,
deceased,

       Plaintiff,

  -against-

COBBLE HILL HEALTH CENTER, INC., PARKSHORE
HEALTH CARE, LLC d/b/a FOUR SEASONS NURSING
AND REHABILITATION CENTER, PARKSHORE HEALTH
CARE, LLC, FOUR SEASON NURSING AND
REHABILITATION CENTER and THE BROOKLYN
HOSPITAL CENTER,

       Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 509056/2015
Mo. Seq. 11 & 12

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> <u>Seq. 11:</u> 158 – 162, 163 – 182, 186, 187 – 188, 189 – 192, 200 – 201

          <u>Seq. 12:</u> 149 – 151, 152 – 157, 193 – 194, 195 – 198, 199

Defendant The Brooklyn Hospital Center ("Brooklyn Hospital") moves (Seq. No. 11) for

an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing all

claims against them with prejudice.

Defendant Four Seasons Nursing and Rehabilitation Center ("Four Seasons"), also sued

herein as Parkshore Health Care, LLC d/b/a Four Seasons Nursing and Rehabilitation Center

separately moves (Seq. No. 12) for an Order, pursuant to CPLR 3212, granting summary

judgment in their favor and dismissing Plaintiff's complaint against them with prejudice.

Plaintiff opposes both motions.

1

[* 1]

Plaintiff commenced this action on July 23, 2015, asserting claims of medical malpractice, negligent hiring, retention, or supervision, and gross negligence against Brooklyn Hospital on behalf of the decedent.

Plaintiff later filed an Amended Complaint on April 29, 2016, adding claims of violations of the Public Health Law and gross negligence against Four Seasons.

The claims against the moving defendants arise from prevention and treatment of pressure ulcers, specifically during Decedent's February 2013 treatment at Brooklyn Hospital and October 2013 treatment at Four Seasons.

On February 4, 2013, the 86-year-old Decedent presented to the emergency department of Brooklyn Hospital with generalized weakness, unsteady gait, bloody stools, and constipation. On February 5, a physical examination documented stage II pressure ulcers on her sacrum and right buttock.

She was discharged from Brooklyn Hospital to Cobble Hill (non-moving co-defendant), a subacute care facility, on February 15, 2013.

Decedent was readmitted to Brooklyn Hospital from May 7–16, 2013 and September 23–October 2, 2013. On both admissions, she had a stage IV sacral pressure ulcer which was treated for infection. She was discharged from Brooklyn Hospital to Four Seasons.

Decedent resided at Four Seasons from October 2 – November 4, 2013. On admission, she had a stage IV sacral pressure ulcer, bowel and bladder incontinence, Parkinson's disease, hypertension, anemia, dementia, hyperlipidemia, and recurrent urinary tract infections.

On admission to Four Seasons, Decedent was documented to have bilateral abrasions on her legs, the left measuring 3 x 1.5 cm and the right measuring 1.5 x 2 cm. On October 14, her wound assessment was updated to a stage IV pressure ulcer on her left leg, measuring 3 x 2 cm.

2

[* 2]

Decedent was transferred from Four Seasons to Lutheran Hospital on November 4, 2013, and later discharged for home care rather than returning to Four Seasons.

Plaintiff alleges that Brooklyn Hospital and Four Seasons departed from the standard of care in prevention and treatment of pressure ulcers. Specifically, Plaintiff's opposition to this motion relates to the alleged development of a stage II sacral pressure ulcer at Brooklyn Hospital in February 2013, and a stage IV sacral pressure ulcer and left leg pressure ulcer at Four Seasons in October 2013.

In evaluating a summary judgment motion in a medical malpractice action, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (*Rosenzweig v Hadpawat,* 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (*Martinez v Orange Regional Med. Ctr.,* 203 AD3d 910, 912 [2d Dept 2022]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig* at 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023]).

3

[* 3]

In support of their motion (Seq. No. 11), Brooklyn Hospital submits an expert affirmation from Michael Papamichael, M.D. ("Dr. Papamichael"), a licensed physician board certified in internal medicine and geriatric medicine.

Dr. Papamichael opines that all treatment and care rendered by the physicians, nurses, and staff at Brooklyn Hospital was in accordance with the standard of care during Decedent's admissions in February 2013, May 2013, and September-October 2013.

Specific to her admission from February 4-15, 2013, Dr. Papamichael opines that Decedent was properly given repeat assessments for pressure ulcer risk (Braden scale), and she received interventions including nutritional and hydration support, wound care, ointments, dressing changes, and turning and repositioning every two hours.

Dr. Papamichael states that Decedent "presented with a stage II pressure ulcer in the sacral region" from the beginning of her admission on February 4, 2013, and it was "healing" and improved in size under their treatment. Therefore, he opines that no alleged departures from the standard of care proximately caused her claimed injuries.

Based on evaluation of the submissions, the movant's expert establishes prima facie entitlement to summary judgment as to Brooklyn Hospital's compliance with the standard of care and proximate causation throughout all three of Decedent's admissions. Thus, the burden shifts to Plaintiff to raise an issue of fact on the alleged deviations.

In opposition, Plaintiff submits an expert affirmation from Sheryl A. Pearl, M.D. ("Dr. Pearl"), a licensed physician board certified in obesity medicine, family practice, and hospice and palliative medicine.

4

[* 4]

The expert opines that Brooklyn Hospital physicians and staff departed from the standard of care by failing to properly turn and position Decedent to prevent the development of pressure ulcers.

Specifically, she notes there is no evidence Decedent was turned and positioned in the first 18 hours after her arrival in the emergency department (approximately 1:30 p.m.) until the following morning at 7:46 a.m. The expert notes that the first entry on the "Turning and Positioning Flowsheet" from February 4 at 9:30 p.m. stated Decedent was "independent," inconsistent with her chart at any other time, and opines that Brooklyn Hospital departed from the standard of care by not implementing any turning and positioning assistance until the following day.

The expert cites to various inconsistencies in the documentation of Decedent's skin integrity, as well as one entry in which she required a "2-person assist" on February 6. The expert opines that "individuals do not change within a few hours or one day to the next" regarding whether a one-person or two-person assist is needed, and therefore, the standard of care required Decedent to receive a two-person assist at all times.

The expert also opines Brooklyn Hospital departed from the standard of care by keeping Decedent's bed "at 30-45 degrees" at various times during the February 2013 admission, and states that instead the elevation should have remained at 30 degrees.

On the issue of proximate causation, the expert opines that the above departures, specifically in appropriate turning and positioning, led to an increase in Decedent's risk and susceptibility to pressure ulcers, and therefore caused the development or worsening of the stage II pressure ulcers on her sacral area and buttocks.

5

[* 5]

Plaintiff's expert notes that Decedent's stage II pressure ulcers were first documented on the morning of February 5, 2013, and prior assessments did not note any skin breakdown or issues. On this basis, Plaintiff's expert counters the opinion of the movants that those pressure ulcers were "preexisting" and opines they likely developed after her admission.

Plaintiff's expert has sufficiently raised issues of fact to preclude summary judgment as a matter of law, including whether Brooklyn Hospital departed from the standard of care by failing to timely and properly assist in turning and positioning the patient and by elevating the patient's head of bed improperly.

Further, Plaintiff's expert raised issues of fact that these departures proximately caused the development or worsening of Decedent's stage II pressure ulcers, which were first documented one day into her admission. The opinion and interpretation of the medical record by Plaintiff's expert counters the movant's contention that the two stage II pressure ulcers on Decedent's sacrum and buttocks were preexisting when she was admitted. For these reasons, Brooklyn Hospital's motion for summary judgment must be denied as to the February 2013 claims of medical malpractice.

Notwithstanding the above, Plaintiff does not oppose the part of the motion seeking to dismiss the claims arising from Decedent's May 2013 or September-October 2013 treatment at Brooklyn Hospital. Plaintiff also does not oppose dismissal of the negligent hiring/retention/supervision claims. Additionally, the statement from Plaintiff's expert that Brooklyn Hospital was "negligent, reckless, *and/or* contrary to the standard of care" is conclusory and insufficient to show that the claims rise to the level of recklessness or gross negligence. Plaintiff has therefore failed to raise an issue of fact as to the gross negligence claim.

6

[* 6]

Brooklyn Hospital's motion for summary judgment is granted to the extent of dismissing these claims, only.

In reply, Brooklyn Hospital submits an additional expert affirmation from Dr. Papamichael. To the extent this affirmation raises new arguments in reply that were not addressed in the first instance of the moving papers, it cannot be considered by the Court. The responses to Plaintiff's expert reinforce that there are issues of fact and conflicting expert opinions with respect to the February 2013 admission, which require resolution of a jury.

Turning to the motion of Four Seasons (Seq. No. 12), the movant submits an expert affirmation from Mark Lachs, M.D. ("Dr. Lachs"), a licensed physician board certified in internal medicine and geriatric medicine.

Dr. Lachs opines that the staff of the Four Seasons nursing facility complied with the standard of care at all times and did not deprive the resident of any rights under the Public Health Law.

The movant's expert opines that Decedent was properly evaluated and treated from the start of her admission to Four Seasons, and she was treated throughout her admission for a preexisting stage IV sacral pressure ulcer, bilateral leg abrasions, and other significant comorbidities. The expert opines that the sacral pressure ulcer was properly treated, and initially "Santyl and a dry protective dressing" were applied to "remove necrotic tissues from the wound bed." The expert opines that when increased necrotic tissue was observed in the sacral ulcer, the treatment was "appropriately changed to Hydrogel with gauze wound packing and protective covering," which the expert opines is effective in providing moisture, chemical debridement, and pain reduction.

7

[* 7]

As relevant to the left leg wound, the expert opines that Four Seasons initiated a care plan based on her preexisting wounds and risk factors which included "assessing skin every shift, assessing risk factors on a regular basis, turning and positioning every two hours, providing wound care as needed and treatments as ordered, ensuring gentle handling when providing care, providing incontinence care, and monitoring healing." The expert also notes that a pressure-relieving mattress was provided upon admission, and bacitracin was used on the leg abrasions.

The expert acknowledges that during Decedent's admission, the left leg abrasion was "reclassified" to a stage IV ulcer based on the "increase in necrotic tissue." The expert opines that when this change in wound status was observed on October 14, the wound care team changed her treatment to Medihoney, which the expert opines was appropriate to "promote debridement of damaged tissue" and prevent infection through its "antibacterial properties."

On the issue of proximate causation, the movant's expert opines in detail that the 87-year-old Decedent's multiple comorbidities, particularly Parkinson's disease and dementia, contributed to her skin breakdown and deterioration, as skin "requires a significant, continuous supply of nutrients, blood flow, and oxygen to maintain its integrity" and Decedent's overall health was highly compromised. The expert opines that "given her global decline, the deterioration of these wounds was clinically unavoidable," and therefore no neglect on the part of Four Seasons was a proximate cause of her skin deterioration.

Furthermore, the expert addresses the rules and regulations of NYCRR 415.11 and 42 CFR 483.21 in detail and opines that Four Seasons provided a proper "head-to-toe skin assessment" and Braden Scale risk evaluation on Decedent's admission, and "individualized care plans" were created to address her skin integrity.

8

Based on the expert submissions, Four Seasons has established prima facie entitlement to summary judgment on all claims against them, and the burden shifts to Plaintiff to raise an issue of fact.

In opposition, Plaintiff submits a separate expert affirmation from Dr. Pearl, the licensed physician certified in obesity medicine, family practice, and hospice and palliative care, addressing the claims against Four Seasons.

Plaintiff's expert offers opinions primarily on the treatment of Decedent's left leg pressure ulcer. The expert notes that on admission, Decedent was classified as having a left leg "abrasion." It is not disputed that this abrasion progressed to a stage IV pressure ulcer, as noted in her chart on October 14, 2013.

Plaintiff's expert opines that Four Seasons improperly applied "no topical wound treatments" to the left leg abrasion for at least fourteen days from the time of her admission, which she opines was a departure from the standard of care. The expert also opines that despite the reclassification of the left leg abrasion as a stage IV pressure ulcer on October 14, there was no change in treatment (e.g., application of Medihoney) until October 17, three days later.

Additionally, Plaintiff's expert opines that although Decedent's sacral ulcer had been treated "twice daily" with Santyl at Brooklyn Hospital, it was reduced to "just daily dressings" at Four Seasons. Plaintiff's expert also counters the movant's opinion that she was properly switched from Santyl to Hydrogel later in her admission, opining that Hydrogel is a "much less effective debriding agent" than Santyl.

Plaintiff's expert opines that the failure to timely apply topical ointments to the leg abrasion proximately caused the progression and worsening of her left leg pressure ulcer, and the

9

use of Hydrogel rather than Santyl contributed to Decedent developing osteomyelitis in the sacral pressure ulcer.

Based on the parties' submissions, Plaintiff's expert has raised issues of fact sufficient to defeat Four Seasons' motion for summary judgment. The medical expert offers conflicting opinions on the alleged departures from the standard of care in treating Decedent's left leg abrasion, as well as the medication/dressings applied to the sacral pressure ulcer, and thus raises an issue of fact as to whether Decedent was deprived of adequate medical care under the Public Health Law.

Contrary to the movant's argument in reply, Plaintiff's expert also addresses and counters their expert's opinions on proximate causation. Plaintiff's expert points out Decedent's pressure ulcers eventually showed improvement, reduced in size, and healed, indicating that her deterioration of skin integrity was not "clinically unavoidable" even with proper treatment, as stated by the movant's expert. "When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution" (*Stewart v. North Shore Univ. Hosp. at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022] citing *Russell v. Garafalo,* 189 A.D.3d 1100, 1102 [2d Dept. 2020]).

Notwithstanding the above, Plaintiff's expert fails to raise any genuine issue of fact as to the alleged gross negligence or reckless disregard of Four Seasons. Generally, a claim for gross negligence and punitive damages in the context of medical malpractice requires that the underlying facts evince "a high degree of moral culpability or willful or wanton negligence or recklessness" (*Woehrle v Buono,* 232 AD3d 820, 822 [2d Dept 2024]). Under Public Health Law § 2801-d (2), punitive damages may be recovered against a residential health care facility when

10

the deprivation of the patient's rights "is found to have been willful or in reckless disregard for the lawful rights of the patient."

The expert states only in a single conclusory sentence that their actions were "negligent, reckless, *and/or* violated her right to adequate and appropriate medical care." Plaintiff has not set forth any factual allegations or expert opinions that rise to the level of willful or reckless disregard. Therefore, Four Seasons' motion for summary judgment is granted as to the gross negligence/punitive damages claims only.

Accordingly, it is hereby:

**ORDERED** that Defendant Brooklyn Hospital's motion (Seq. No. 11) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them, is **granted to the extent** of dismissing any claims against Brooklyn Hospital for gross negligence, negligent hiring/retention/supervision, and any claims related to the May 2013 or September-October 2013 admissions, and the motion is otherwise **denied**; and it is further

**ORDERED** that Defendant Four Seasons' motion (Seq. No. 12), for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them, is **granted to the extent** of dismissing any claims against Four Seasons for gross negligence, and the motion is otherwise **denied.**

This constitutes the decision and order of this Court.

ENTER.

_____

**Hon. Consuelo Mallafre Melendez**
**J.S.C.**

11